IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| VIOLET EMILY KANOFF | CHAPTER 13 |
| a/k/a VIOLET SOUDERS | |
| a/k/a VIOLET'S ON WALNUT | |
| a/k/a VIOLET KANOFF, | |
|     Debtor | |
| | CASE NO. 1:08-bk-03377MDF |
| CITY OF HARRISBURG, | |
|     Movant | |
| v. | |
| VIOLET EMILY KANOFF | |
| a/k/a VIOLET SOUDERS | |
| a/k/a VIOLET'S ON WALNUT | |
| a/k/a VIOLET KANOFF, | |
|     Respondent | |

## OPINION

On January 5, 2009, the City of Harrisburg (the "City") filed an objection to the proposed chapter 13 plan of Violet Emily Kanoff ("Debtor") contending that the City held a security interest in Debtor's business assets, specifically a liquor license, which is listed as an asset in Debtor's amended Schedule B. On March 11, 2009, the City filed a pleading styled "Motion to Determine Status of Liquor License #R-00223 as Property of Movant, City of Harrisburg, Pursuant to Order of Court Dated October 21, 2003" (the "Motion") asserting that the City was the owner of the liquor license. The City and Debtor have filed a stipulation of facts and have requested the Court to determine as a matter of law the respective rights of Debtor and the City in the liquor license.[1]

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (O). This Opinion constitutes findings of fact and conclusions of law required to be made by Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

## I. Factual Findings[2]

On June 15, 2001, Debtor obtained a business loan from the City of Harrisburg, Mayor's Office of Economic Development ("MOED").[3] In conjunction with the loan, Debtor granted the City a security interest in Debtor's assets, including Liquor License R-00223, which the City perfected by filing a UCC-1 financing statement on June 19, 2001. When Debtor defaulted on the loan in February 2003, the City confessed judgment against her in the amount of $131,089.54. In 2006, five years after the financing statement was filed, perfection of the security interest lapsed.

On March 13, 2003, Debtor filed a chapter 13 bankruptcy petition, docketed at case number 1:03-bk-0147, in the Middle District of Pennsylvania. With Debtor's concurrence, the City obtained relief from the automatic stay on October 21, 2003 to enable the transfer of the license to a third party and, thereby, satisfy the City's lien on the license. The City, chapter 13 trustee, and Debtor entered into a stipulation agreeing that confirmation of Debtor's plan would not avoid the City's lien and that the lien would be satisfied upon transfer of the liquor license.

On December 16, 2004, the City paid a $1,360.00 fee to the Pennsylvania Liquor Control Board ("PLCB") in order to renew the license. In August 2005, the City filed an application to transfer the license to the National Sports Hall of Fame Foundation ("Foundation"). On January 1, 2006, the City of Harrisburg assigned its interest in the liquor license to NSHF Food Services, LLC ("NSHF"), a subsidiary of the Foundation. A second transfer application was filed with the PLCB in May 2006 to transfer the license from the Foundation to NSHF. Neither transfer was

---

[2] The factual narrative in this opinion adopts the stipulation of facts submitted by the parties in their respective briefs.

[3] The financing provided to Debtor by the City was for the purpose of operating a restaurant known as Violet's on Walnut.

2

approved by the PLCB before the filing of the within case, and the license remains in safekeeping with PLCB.[4]

On July 25, 2008, Debtor's 2003 chapter 13 bankruptcy case was dismissed. In September 2008 Debtor filed her petition in the instant case. In her initial schedules, Debtor failed to list the liquor license as an asset or to claim it as exempt. But on January 5, 2009, she amended her schedules to include the liquor license and to claim a partial exemption in its value.

## II. Discussion

The first issue before me is whether Liquor License R-00223 is property of the estate. If it is not, then I have no jurisdiction over the issue of the City's ownership interest, if any, in the license.

### A. Liquor License R-00223 is property of the bankruptcy estate.

The property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Although bankruptcy law is federal, property rights in bankruptcy are determined by state law. *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec.* Co., 549 U.S. 443, 450-51 (2007) ("'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law.'"). Generally, a debtor's interest in a liquor license issued by the PLCB becomes property of the estate when a bankruptcy petition is filed. *In re Nejberger*, 934 F.2d 1300 (3d Cir. 1991).[5]

---

[4]*See* 47 P.S. §4-468(b.1).

[5]Before 1986, a Pennsylvania liquor license could not serve as collateral in a secured transaction because the license was considered to be a "privilege" granted by the Commonwealth to the licensee, not a "property" right. *21 West Lancaster Corp. v. Main Line Restaurant, Inc.*,

3

Case 1:08-bk-03377-MDF    Doc 59    Filed 06/17/09    Entered 06/17/09 13:49:53    Desc
Main Document    Page 3 of 11

The parties agree that the PLCB was holding the license in safekeeping on the date Debtor's petition was filed. "Safekeeping" is a special status created by the Liquor Code, through the following provision:

> In the event that any person to whom a license shall have been issued under the provisions of this article shall become . . . bankrupt by either voluntary or involuntary action, the license of such person shall be immediately placed in safekeeping with the board for the balance of the term of the license and for an additional period of one year upon application to the board by the trustee. . . . The trustee . . . shall have, during said period of safekeeping, the same rights, benefits and obligations as to the license as the person to whom the license had been issued, including the right to transfer the license subject to the approval of the board. The license shall continue as a personal privilege granted by the board and nothing herein shall constitute the license as property.

47 P.S. § 4-468(b.1). The PLCB holds a license in safekeeping "for the benefit of the licensee." *In re Italian Oven, Inc.*, 209 B.R. 355 (Bankr. W.D. Pa. 1997) (citing 40 Pa.Code § 7.31(a)). Because the license was being held in safekeeping for Debtor's benefit, this "privilege" (see fn.5) granted by the PLCB became an asset of the bankruptcy estate when Debtor filed her case.

### B. The City neither owns Liquor License R-00233 nor holds a perfected security interest in the license.

The City claims an interest in the license based on the security interest it perfected in 2001 and the order for relief from stay that it obtained in Debtor's prior bankruptcy case. As evidence of its rights, the City notes that it filed license renewal applications and paid

---

290 F.2d 354, 358 (3d Cir. 1986). However, on July 1, 1987, the Pennsylvania legislature amended the state's Liquor Code to provide that "[t]he license shall constitute a privilege between the [PLCB] and the licensee. As between the licensee and third parties, the license shall constitute property." 47 P.S. 4-468(d) (1987), Act of June 29, 1987, P.L. 32, No. 14, § 66, effective July 1, 1987; *See Straffi v. State of New Jersey (In re Chris-Don, Inc.)*, 308 B.R. 214, 218 (Bankr. D. N.J. 2004); *In re Jackson*, 93 B.R. 421, 423 (Bankr. W.D. Pa. 1988).

4

outstanding fees while the license was in statutory safekeeping.[6] Debtor asserts that the license is property of the estate and that the City, like any unsecured creditor, has no special interest in the license.

The City concedes that it is unable to rely exclusively on the filing of a UCC-1 financing statement to establish perfection of its security interest. Under the Uniform Commercial Code, 13 Pa. C.S.A. § 1101 et seq., the City's perfected security interest, which was created by the filing of a UCC-1 on June 19, 2001, lapsed in 2006 when the City failed to file a continuation statement as required by 13 Pa. C.S. § 9515(a)(c). Although perfection lapsed when the City failed to file a continuation statement, the City argues that it continued to hold a perfected security interest in the license by virtue of its "constructive possession" of the license during the course of Debtor's first bankruptcy case. The City also cites the efforts it initiated with the PLCB to renew and transfer the license as evidence that it exercised sole and exclusive "control" over the license.

### 1. Whether the City held a perfected security interest on the date the petition was filed

The City admits that its UCC-1 statement lapsed in 2006, but argues that its interest remains perfected through "constructive possession" of the collateral. A creditor cannot perfect a security interest through possession of the collateral unless the UCC authorizes perfection through possession. *In re Professional Ins. Management*, 130 F.3d 1122 (3d Cir. 1997); 13 Pa.

---

[6]In its pleadings, the City makes inconsistent averments about its interest in the license. In the Motion, the City states that it seeks "a determination that the Liquor License #R-00223 is the property of the City of Harrisburg." (Motion, p.3). However, the City's brief is entitled "Brief of City of Harrisburg in Support of its Status as Holding a First-Priority Security Interest in Pennsylvania Liquor License R-223." In its brief the City concedes that it cannot own the liquor license because the Pennsylvania Liquor Code prohibits a municipality from owning a license. Thus, it appears that the City now seeks only to assert that it holds a perfected security interest.

C.S.A § 9310(a). Section 9313(a) provides, in relevant part, that:

> Except as otherwise provided in subsection (b), a secured party may perfect a security interest in tangible negotiable documents, goods, instruments, money or tangible chattel paper by taking possession of the collateral. . . .

13 Pa. C.S. § 9313(a). The City does not assert that the license is a "tangible negotiable document," an "instrument" or "tangible chattel paper," but argues that a liquor license is most like "goods." The Uniform Commercial Code defines goods as "all things which are movable at the time a security interest attaches" and specifically states that the term includes fixtures, standing timber, unborn animals, certain crops, manufactured homes and certain computer programs embedded in goods. 13 Pa. C.S.A. § 9102.[7] The City cites no authority to support its characterization of a liquor license as goods, but relies on the broad scope of the definition to support its contention.

The Pennsylvania Superior Court, however, has held that a liquor license is not included in the term "goods." *Tomb v. Lavalle*, 298 Pa. Super. 75, 78, 444 A.2d 666, 667 (1981). In *Tomb*, the Superior Court found that when construing the applicability of the Uniform Commercial Code to state liquor licenses, state and federal courts uniformly have held that these licenses are general intangibles. *Tomb,* 298 Pa. Super. at 78-79, 444 A.2d at 668 (citing cases).[8] *See also In re Italian Oven, Inc.*, 209 B.R. 355, 358 (Bankr. W.D. Pa. 1997) (parties agreed that liquor

---

[7] Section 9102 also states that the term "goods" does not include accounts, chattel paper, commercial tort claims, deposit accounts, documents, *general intangibles*, instructions, investment property, letter-of-credit rights, letters of credit, money or oil, gas or minerals before extraction. 13 Pa. C.S.A. § 9102 (emphasis added).

[8] The Pennsylvania version of the UCC defines a general intangible as "[a]ny personal property . . . other than goods, accounts, contract rights, chattel paper, documents and instruments." 13 Pa. C.S.A. § 9106.

6

license was a general intangible). Although I am not bound to follow decisions of a state intermediate appellate court, "such decisions are not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Jewelcor Inc. v. Karfunkel*, 517 F.3d 672, 676 (3d Cir. 2008). The City has cited no authority, nor advanced any reasoning, that would lead this Court to conclude that the Pennsylvania Supreme Court would come to a different conclusion than the Superior Court. Therefore, I agree with the Superior Court that Debtor's liquor license is a general intangible and is not goods.

General intangibles are not one of the types of property in which a security interest may be perfected by taking possession of the collateral as authorized under 13 Pa. C.S.A. § 9313. *Commercial National Bank of Pennsylvania v. Seubert & Associates*, 807 A.2d 297, 307 (Pa. Super. Ct. 2002). Therefore, the City was required to perfect its interest in the liquor license by filing a UCC-1 with the appropriate agency, which it did. However, the City's interest became unperfected when it failed to file a continuation statement in June 2006. Because a security interest in a general intangible cannot be perfected by possession, whether actual or constructive, the City's arguments regarding its "constructive possession" of the license are irrelevant.[9] Therefore, I conclude that the City's security interest was unperfected on the date that Debtor filed the instant case.

---

[9]Even if a security interest in a general intangible could be perfected by possession, the City's argument fails. The City does not assert that it had actual possession of the license, but only that it had "constructive" possession. A security interest may be perfected by constructive possession only when the person holding the collateral on behalf of the creditor authenticates a record acknowledging that he holds possession of the collateral for the secured party's benefit. 13 Pa. C.S.A. § 9313(c). The City has not alleged that the PLCB, which had actual possession of the liquor license, issued an authentication that it was holding the license for the benefit of the City.

7

### 2. The City's exercise of "control" over the license as evidence of an ownership interest

The City admits that state law prohibits it from owning or possessing a liquor license. As the City states in its brief, Pennsylvania's Liquor Code bars the issuance of liquor licenses to parties who hold a public office or are charged with law enforcement. As a political subdivision of the Commonwealth, the City acts through its public officials and is charged with law enforcement responsibilities. 47 P.S. § 4-437(d).[10] Accordingly, the City cannot own or possess a liquor license.

Although the City acknowledges these limitations, it argues, nevertheless, that it has an ownership interest in the license by virtue of its "control" over the license as evidenced by its payment of the renewal and transfer fees to the PLCB. As authority for this proposition, the City cites *In re Italian Oven,* 209 B.R. at 358, a case in which the bankruptcy court dismissed a creditor's claim that it held a security interest in a liquor license by virtue of constructive possession. In *Italian Oven*, the liquor license document remained on the physical premises of the debtor for a short time after the debtor sold the business to the creditor. The sales transaction included the proceeds of the liquor license and not the license itself. The Bankruptcy Court for the Western District of Pennsylvania held that the creditor's physical possession of the license was too brief and attenuated to constitute constructive possession for purposes of establishing a

---

[10]Section 4-437(d) provides as follows:

(d) No person who holds, either by appointment or election, any public office which involves the duty to enforce any of the penal laws of the United States of America or any of the penal laws of this Commonwealth or any penal ordinance or resolution of any political subdivision of this Commonwealth shall be issued any manufacturer's, importing distributor's, distributor's or retail dispenser's license, nor shall such a person have any interest, directly or indirectly, in any such license. 47 P.S. § 4-437(d).

8

security interest. *Id.*[11] The City argues that because it held constructive possession of the license continuously for several years, commencing with the motion for relief in the prior case, a different result should obtain. The City's argument regarding "continuous" constructive possession is no more persuasive on the issue of its "ownership" of the liquor license in this case than was the movant's argument in *Italian Oven.* The City never had constructive possession of the license, and even if it did, it fails to provide any legal authority for its assertion that constructive possession may be equated with ownership.

Just as possession does not establish ownership, neither does an order lifting the automatic stay divest an owner of title to property requiring surrender of the property to the lienholder. The entry of the order granting the City's motion for relief from stay in Debtor's prior case did not terminate her interest in Liquor License R-00233 or grant the City any greater interest in the license. "Section 362(a) does not enlarge the rights of an individual under a contract or give an individual any greater rights in a contract." *In re First American Health Care of Georgia, Inc.,* 1997 WL 33477665, 5 (Bankr.S.D.Ga.) (citing *Hazen First State Bank v. Speight*, 888 F.2d 574, 576 (8th Cir.1989)). *See also In re Bon Ton Restaurant and Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("It is not intended that a non-debtor party should acquire greater rights in a case under the Code than he has outside the Code.") For both debtors and creditors, "the filing of a [bankruptcy] proceeding cannot resuscitate . . . rights fully terminated pre-petition," and § 362 does not give a party "greater rights in a contract, where the contract itself gives no right." *In re Gomes Ranch*, 85 B.R. 558, 559 (Bankr. D. Mont. 1987). Thus, creditors who obtain relief from the stay in bankruptcy are not immediately entitled to

---

[11]Earlier in the opinion, the Court stated that the license was a "general intangible," but the opinion did not discuss the UCC provisions or the cases stating that a security interest in a general intangible may only be perfected through the filing of a UCC-1.

possession of their collateral unless they obtained possession prior to the filing of the bankruptcy petition. In the within case, the lifting of the automatic stay in October 2003 freed the City to take further action under state law to enforce its lien in the collateral. But the lifting of the stay did not strip Debtor of her interest in the license. Because the Liquor Code prohibited the City from obtaining possession, the only avenue available to satisfy the lien was the sale of the license to a third party who would satisfy the lien through the payment of the purchase price. The transfer of the license to NSHF was never completed, and perfection of the City's security interest lapsed before Debtor filed her 2008 petition.

The parties have stipulated that Liquor License R-00223 was in safekeeping when Debtor filed her second petition.[12] It is unclear by what authority the City could sell the license to a third party absent concurrence by Debtor. Under state liquor regulations, in order "[t]o have a license reissued from safekeeping [a]n application for return of the license shall be filed *by the licensee.*" 40 Pa. Code § 7.31(e)(1). Debtor, not the City, is the licensee of Liquor License R-00223. Thus, the City failed to demonstrate that its payment of the license renewal fee and its filing of applications to transfer the license gave it control over the disposition of the license. Consequently, neither the lifting of the stay nor the payment of fees to the PLCB enabled the City to obtain ownership or control of the license.

---

[12] As of the date of this Opinion, a search of the licensure records on the official website of the LCB, www.lcb.state.pa.us for Liquor License R-00223 reveals that both the Debtor and NSHF Food Services, LLC are named under the heading "General Licensee Information." Debtor's status is "inactive." At the website, "inactive" status is defined as "not renewed or validated. Not in operation or can be operating on temporary authority." Although the parties stipulated that the license was in safekeeping, this is a separate status from inactive. "Safekeeping" is defined as "current but not in operation. Could have the authority to operate." The status of NSHF Food Services, LLC as a licensee is listed as "pending."

### III. Conclusion

For these reasons, I conclude that the City's motion must be denied and the objection to Debtor's chapter 13 plan overruled. The City does not hold a perfected security interest or an equitable ownership interest in the license. Debtor held title to the license at the time she filed her petition, which became property of the estate on that date. The City has a general unsecured claim against Debtor's estate in the amount of $131,089.54.

An appropriate order will be entered.

By the Court,

Mary D. France
Bankruptcy Judge

Date: June 17, 2009

*This document is electronically signed and filed on the same date.*